FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 AUG -3 PM 3: 24

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DAVID ESKEW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 105-091 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff applied for DIB and SSI on February 8, 2000, alleging an onset of disability of July 15, 1992. Tr. ("R"), pp. 49-52. Plaintiff's applications were denied initially; upon reconsideration, it was determined that Plaintiff had been disabled since May 8, 2000. R. 22, 40-42. Nevertheless, Plaintiff was denied benefits because the May 2000 onset date was

subsequent to the expiration of Plaintiff's disability insured status.[1] R. 42-45. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted the hearing on February 2, 2002 and took testimony from Plaintiff, who was represented by counsel. R. 340-357. The ALJ determined that Plaintiff had been disabled from May 8, 2000 until December 13, 2001, but not before or after that period. R. 18-30. The ALJ went on to conclude that Plaintiff was able to perform the full range of sedentary work both before and after his period of disability. R. 28-29.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's "osteopetrosis"[2] is an impairment that is considered "severe" based on the requirements in the Regulations, 20 CFR §§ 404.1520(b) and 416.920(b).

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965) but retains the residual functional capacity ("RFC") to perform the full range of sedentary work.[3]

---

[1] Plaintiff was insured for benefits only through March 31, 2000. R. 28.

[2] Osteopetrosis is a rare disease which causes the bones to become overly dense. This condition makes the bones more susceptible to fracture. See Pl.'s Br., p. 2 n.1.

[3] 20 C.F.R. §§ 404.1567(a) and 416.965(a) provide:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs

2

> 5.  As the claimant retains the RFC to perform the full range of sedentary work, Medical-Vocational Rules "201.18, 201.21, and 201.22" direct a finding of "not disabled."[4]

R. 24-29.

The ALJ's opinion became the Commissioner's final decision when the Appeals Council ("AC") denied Plaintiff's request for review on April 6, 2005. R. 5-7. Having exhausted his administrative remedies, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal of that adverse decision. Plaintiff now argues that the ALJ erred: (1) in his assessment of the credibility of Plaintiff's pain testimony, and (2) in relying entirely upon the Medical-Vocational Guidelines to determine that Plaintiff was not disabled. See Pl.'s Br., pp. 7-11.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the

---

are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[4] As the Commissioner correctly points out, the ALJ's reliance upon Medical-Vocational Rules 201.18, 201.21, and 201.22 was erroneous. See Com'r's Br., p. 15 n.3. As the Commissioner notes, at the time of the ALJ's decision, Plaintiff was under 45 years old; accordingly, the ALJ should have relied upon Medical-Vocational Rules 201.28 and 201.29. Id. at 14-15. Nevertheless, the Court agrees with the Commissioner that this error was harmless, as "the [Medical-Vocational] Grid rules cited by the ALJ were for an individual who was older than Plaintiff, and thus represented more disadvantageous factors." Id. at 15 n.3. Simply put, the ALJ's miscite had no material impact upon his analysis or his decision.

3

Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to

4

determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A.     Plaintiff's Pain Testimony**

First, the Court addresses Plaintiff's argument that the ALJ "erred in failing to adequately discredit Plaintiff's complaints of pain." Pl.'s Br., p. 8. The Eleventh Circuit has established a three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Here, Plaintiff argues that the ALJ erred in discounting the alleged painful effects of the "incomplete healing" of a left hip fracture. Pl.'s Br., pp. 6, 9. Plaintiff also suggests that the ALJ erred in discounting alleged pain arising from a jaw fracture and subsequent infection. Id. at 2-4, 9-10.

In discounting Plaintiff's claims of debilitating hip pain, the ALJ noted: (1) although

5

Plaintiff could not walk following a May 8, 2000 fall during which he fractured his left hip, treatment notes indicate that by December 2001 Plaintiff was "'full weightbearing' and walking;" (2) Plaintiff testified that "no restrictions have been placed on his activities" by his doctors; (3) at the time of the administrative hearing, Plaintiff was taking no pain medications; and (4) in December 2001, Plaintiff's treating orthopedic surgeon told him he could "continue his normal activities." R. 24-27. In regard to Plaintiff's jaw pain, the ALJ observed: (1) after follow-up surgery in June 2001, Plaintiff "had good intake by mouth;" and (2) Plaintiff was not taking pain medication for his jaw at the time of the hearing. R. 26.

Plaintiff argues that the ALJ unreasonably relied upon "Plaintiff's sporadic medical treatment and lack of pain medication." Pl.'s Br., p. 9. According to Plaintiff, these facts are indicative of Plaintiff's "financial difficulties," rather than a deliberate "failure to maintain regular treatment." Id. at 10. Plaintiff also cites a May 2, 2000 letter, written by Physician's Assistant David Brown and his Attending Physician, Dr. Anthony Malloy, which stated that "no therapeutic modality" would be of great help to Plaintiff and that Plaintiff could not afford hyperbaric oxygen treatment for a jaw infection he suffered following a fracture of the left mandible. Id. at 9-10 (quoting R. 223). In response, the Commissioner points out: (1) there is no evidence indicating that Plaintiff's jaw pain impacted his ability to work; and (2) following hip surgery, Plaintiff indicated to doctors that he was pain-free. Comm'r's Br., pp. 11-12.

The key factor here is the ALJ's reliance upon Plaintiff's doctor's December 2001 statement that Plaintiff should "continue his normal activities." R. 338. Plaintiff also testified at the hearing that since that date, no physician had ever placed any restrictions upon

6

his activities. R. 355. This evidence is difficult to square with Plaintiff's claims of debilitating pain and difficulty ambulating. Pl.'s Br., p. 9. The ALJ also correctly noted that the evidence shows that Plaintiff was able to work before he fell from a scaffold in May 2000 and broke his hip. R. 24. Furthermore, the ALJ also noted that despite Plaintiff's jaw problems (which began in the late 1990s) and his inability to pay for treatment with hyperbaric oxygen, Plaintiff was able to prepare his own meals, which included "hamburgers, hotdogs, [and] spaghetti." R. 25-26. Thus, Plaintiff's jaw problems have apparently not prevented him from eating solid foods. R. 26. At any rate, the ALJ correctly found no evidence to substantiate Plaintiff's claims that severe jaw pain made it impossible for him to work. Id.

Simply put, although the ALJ relied in part on Plaintiff's failure to secure medical treatment or to take any pain medications during the relevant period, the ALJ's greater reliance is upon medical evidence showing that Plaintiff's limitations did not prevent him from working before or after his period of disability. Plaintiff points to no evidence contrary to that relied upon by the ALJ. In sum, the Court concludes that the ALJ articulated sufficient reasons to discredit (in part) Plaintiff's pain testimony.

**B.     The ALJ's Reliance Upon the Medical-Vocational Guidelines**

After discrediting Plaintiff's pain testimony, the ALJ determined that Plaintiff had the RFC for sedentary work. Plaintiff argues that this determination was erroneous because it is based on an improper assessment of Plaintiff's chronic pain and depression. Pl.'s Br., p. 11. Of course, because Plaintiff fails to show that the ALJ's credibility determination was not based on substantial evidence, the logic of this argument is severely undercut.

Furthermore, contrary to Plaintiff's argument, in making an RFC finding that Plaintiff was limited to sedentary work, the ALJ carefully evaluated Plaintiff's doctor's instructions to "'be very[,] very careful with his activities that he is involved in to avoid any additional fractures.'" Id. (quoting R. 225).

In assessing Plaintiff's depression, the ALJ noted that the only relevant evidence in the record is a psychological evaluation completed on May 31, 2000, while Plaintiff was still unable to walk due to his hip injury. R. 26. Dr. Gregory P. Hollis, a clinical psychologist, diagnosed "mild to moderate" depression and pain disorder. R. 216. Nevertheless, as the ALJ correctly observed, Dr. Hollis also concluded that Plaintiff "has the ability to understand and carry out simple instructions and to get along with the public." Id. As the ALJ correctly noted, although Dr. Hollis completed his evaluation after Plaintiff "had just recently sustained injury," Dr. Hollis's findings do not suggest the presence of a severe mental impairment. Id. at 27. Indeed, Dr. Hollis concluded that Plaintiff's physical condition, rather than any psychological factors, was the "subject of his disability" at that time. Id. at 216. Of note, since Dr. Hollis's evaluation, Plaintiff has not sought psychological or psychiatric treatment of any kind.

Simply put, Plaintiff has not shown that his subjective symptoms, including pain and depression, render the ALJ's RFC finding inadequate. As the RFC determination that Plaintiff could perform the full range of sedentary work is supported by substantial evidence, the ALJ could properly rely upon the Medical-Vocational Guidelines in determining that Plaintiff was not disabled. In the Eleventh Circuit, when nonexertional impairments are at issue in a case where the ALJ must determine that a claimant can perform work which exists

8

in the national economy, expert testimony is ordinarily required--unless the claimant can perform unlimited types of work. See Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989). When a claimant can perform unlimited types of work within a given exertional range, the Medical-Vocational Guidelines may apply without the need for expert testimony to show that a claimant can perform work which exists in the national economy. See id.; but see MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (preferring testimony of an expert that a claimant can perform a specific job when allegations of nonexertional impairments have been made). Here, the ALJ properly determined that Plaintiff had the RFC to perform the full range of sedentary work. Thus, it was unnecessary to obtain VE testimony.

To conclude, the ALJ's opinion is supported by ample evidence and should not be disturbed.

## IV. CONCLUSION

Accordingly, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 3rd day of August, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## Southern District of Georgia

ATTORNEYS SERVED:

Kipler Scott Lamar
Kenneth D. Crowder

CASE NO:        CV105-91

DATE SERVED:  8/3/06

SERVED BY:     L. FLANDERS

☐ Copy placed in Minutes
☐ Copy given to Judge
☑ Copy given to Magistrate